USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: ___7/17/13___

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                       :

ADRIENNE REGINA JACKSON,

                  Plaintiff,     :      12 Civ. 654 (DAB) (DF)

                       :      **REPORT AND**

     -against-                   **RECOMMENDATION**

                       :

ELISSA O'BRIEN, BARBARA HANSON,
NEW YORK CITY DEPARTMENT OF     :
EDUCATION,

                       :

            Defendants.
------------------------------------------------------------X

**TO THE HONORABLE DEBORAH A. BATTS, U.S.D.J.:**

      In this *pro se* employment discrimination action brought pursuant to Title VII of the Civil

Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), defendants Elissa O'Brien

("O'Brien"), Barbara Hanson ("Hanson"), and the New York City Department of Education

("DOE")[1] (collectively "Defendants") have moved to dismiss the Complaint of plaintiff

Adrienne Regina Jackson ("Plaintiff"), pursuant to Rules 12(b)(5) and (6) of the Federal Rules of

Civil Procedure.  For the reasons discussed below, I recommend that, pursuant to Rule 12(d), the

Court convert the motion to one for summary judgment, and then grant summary judgment to

Defendants on statute-of-limitations grounds.

---

    [1] The DOE is still referred to by some as the "Board of Education or "BOE," after the
name of the entity responsible for the city's schools prior to a reorganization in 2002.  Although
Defendants refer to the "BOE" in their papers, the Court will use name "DOE" herein, based on
the way in which Plaintiff has identified this defendant in the caption.

## BACKGROUND

A.    Factual Background[2]

Plaintiff worked as a paraprofessional for the Department of Education from April of 1996 until she was terminated from that position. (*See* U.S. Equal Opportunity Commission Intake Questionnaire, dated May 19, 2011 ("EEOC Questionnaire") (annexed to Complaint, dated Jan. 20, 2012 ("Compl.") (Dkt. 1)), at 1.[3]) During the spring of 2009, Plaintiff was working at a school known as "P10X at I.S. 162X" ("P10X"), located in the Bronx, New York.[4] (*See id.*) As part of her duties at P10X, Plaintiff accompanied students to the cafeteria to assist at meals. (*See* Compl., at 7.)

On March 9, 2009, Plaintiff was in the cafeteria with her students for lunch. (*See* Compl., at 3; Pl. Aff., at 2.) At one point during the lunch period, Plaintiff encountered a group of students from a different school, with which P10X shared space. (*See* Compl., at 3; Pl. Aff., at 2.) One student allegedly said something disrespectful to Plaintiff, and the group "began to

---

[2] Ordinarily, on a motion to dismiss, the Court would take as true the facts set forth in the plaintiff's complaint and any documents incorporated therein. Here, as the Court is recommending conversion of Defendants' motion to one for summary judgment, certain of the facts set out herein are, as indicated, taken from additional evidence submitted by the parties in connection with the motion.

[3] The pages of both Plaintiff's Complaint and an Affirmation that Plaintiff has submitted in opposition to Defendants' motion (*see* Affirmation in Opposition to Motion to Dismissed [sic], dated Dec. 18, 2012 ("Pl. Aff.") (Dkt. 25)), are numbered irregularly or not at all. For ease of reference herein, the Court has assigned separate, sequential page numbers to the Complaint and annexed documents, and has done the same with respect to Plaintiff's Affirmation.

[4] The Court may take judicial notice of the fact that P10X is a school within the Department of Education's "District 75" for special education, and that the school is considered to be located at one main site and multiple "off-site" general education schools. *See* http://schools.nyc.gov/SchoolPortals/08/X010/default.htm; *see also Mary Jo C. v. New York State and Local Retirement System*, 707 F.3d 144, 149 (2d Cir. 2013) (noting that, on motion to dismiss, court may take judicial notice of certain facts).

2

laugh, giggle," and say things under their breath. (Pl. Aff., at 2.)  In her Complaint, Plaintiff

alleges that she immediately reported the incident to Margaret Torres ("Torres"), a school aide

from the other school (*see* Compl., at 3), although, in her later Affirmation, Plaintiff states that

she first engaged the student and told her not to be disrespectful, and then called over Torres

(Pl. Aff., at 2).  Plaintiff also asserts that she told a school safety agent, who was passing by (an

individual identified by Plaintiff only as "Henly"), that the student had been disrespectful, and

that Henly escorted the student out of the cafeteria. (*See* Compl., at 3; Pl. Aff., at 2.)  According

to Plaintiff, two other co-workers also witnessed the incident. (*See* New York State Division of

Human Rights Complaint Form, dated June 15, 2011 ("SDHR Charge") (annexed to Compl.),

at 2 (noting the incident was also witnessed by "Berky Blanco" and "Nurse Alicia Nelson").)

Plaintiff states that she soon learned that the group of students had accused her of cursing

at them. (*See* Pl. Aff., at 2.)  Concerned with the implications of this rumor, Plaintiff spoke with

defendant O'Brien, P10X's Assistant Principal and Plaintiff's supervisor, about the incident, and

denied the student accusations. (*See* Compl., at 3.)  O'Brien told Plaintiff "not to worry," that

she had spoken to the other school's principal, Ms. Manzillio, about the allegations, and that

"everything was o.k." (Compl., at 3.)  Nevertheless, "[a] few days later," Plaintiff received a

letter instructing her to report to P10X's main site because she was being reprimanded for

"verbal abuse." (*Id.*)  Plaintiff alleges that she was "shocked" to receive the letter because

O'Brien had informed her "numerous times that it was no big deal." (*Id.* at 3-4.)

Defendant Hanson, P10X's Principal, investigated the verbal-abuse allegations, but, in

Plaintiff's view, Hanson's investigation was incomplete and conducted in a biased and unfair

manner. (*See, e.g.*, EEOC Questionnaire, at 2 ("I believe [Hanson] just didn't like me. . . .

Ms. Hanson just didn't believe me even if I had proof saying I didn't do it[.]  She would believe

3

I did it regardless of the proof.").)  Plaintiff asserts that, during the investigation, she was not asked if she had verbally abused the students and was "never ever given a chance to clear [her] name." (SDHR Charge, at 2.)  Moreover, Plaintiff states that her co-workers who witnessed the incident "refused to get involved" in the investigation because they were "afraid they would lose their jobs." (SDHR Charge, at 2.)

At some point after the investigation, Plaintiff received a letter informing her that she was being terminated for her verbal abuse of students. (*See* Compl., at 4; *see also* Declaration of Leah S. Schmelzer, Esq., in support of Defendants' Motion to Dismiss the Complaint, dated Nov. 13, 2012 ("Schmelzer Decl.") (Dkt. 22), Ex. A (Letter to Plaintiff from Bonnie Brown, District 75 Superintendent, dated Apr. 1, 2009 ("Termination Letter")), at 1-2.)  Plaintiff pursued a union grievance procedure to challenge her termination, resulting in an arbitration decision in the DOE's favor. (*See* EEOC Questionnaire, at 3; *see also* Schmelzer Decl., Ex. B (*United Federation of Teachers v. Department of Education/City of New York*, No. 13 390 00387-11 (Adrienne Jackson), Opinion and Award, dated Apr. 20, 2011 ("Arbitration Opinion").)  The arbitrator found that the DOE had given due consideration to the above circumstances before terminating Plaintiff's employment, and therefore denied Plaintiff's grievance. (*See generally* Arbitration Opinion.)

Plaintiff, who is African American, claims that Defendants' stated basis for her termination was a pretext for unlawful race discrimination. (*See* EEOC Questionnaire, at 2 (answering the questions "What is the reason (basis) for your claim of employment discrimination?" with "Race" and "What reason(s) were given to you for the acts you consider discriminatory?" with "Saying I verbal abuse [sic] children when I didn't."); *see also* SDHR Charge, at 2 ("I am the third Black Female worker who has been fired.").)

4

## B. **Procedural History**

### 1. **Plaintiff's Administrative Filings**

Plaintiff alleges that she filed a charge regarding Defendants' allegedly discriminatory

conduct with the EEOC or an EEOC counselor on May 19, 2011 (*see* Compl., at 5), although the

only EEOC document attached to her Complaint from that date is an EEOC intake questionnaire

indicating that Plaintiff *declined* to file a charge at that time (*see* EEOC Questionnaire, at 3).[5]

On November 30, 2011, the EEOC closed its file on Plaintiff's charge, finding that it had no

jurisdiction because the charge was not timely filed. (*See* EEOC Dismissal and Notice of Rights,

dated Nov. 30, 2011 (annexed to Compl.), at 1; *see also* Compl., at 6 (alleging that Plaintiff

received EEOC's "right-to-sue" notice on Nov. 30, 2011).)

In June of 2011, shortly after submitting her documents to the EEOC, Plaintiff also filed

a complaint with the New York State Division of Human Rights. (*See* SDHR Charge.) That

complaint was similarly dismissed as untimely, on October 27, 2011. (*See* Schmelzer Decl.,

Ex. C (New York State Division of Human Rights Determination and Order of Dismissal for

Untimeliness, *Adrienne Regina Jackson v. City of New York, Department of Education*, dated

Oct. 27, 2011 (the "SDHR Determination").)

### 2. **Plaintiff's Lawsuit and the Pending Motion**

Proceeding *pro se*, Plaintiff commenced this action by filing a form Complaint on

January 20, 2012, in which she named O'Brien, Hanson, and the DOE as defendants. (*Id.* at 2.)

In Section II(A) of the form, which calls for a plaintiff to indicate the type of discriminatory

---

[5] Plaintiff apparently did eventually file a charge with the EEOC, though neither party has provided it to the Court. (*See* Def. Mem., at 5 n.2 (stating that, "[u]pon information and belief," Plaintiff filed a charge with the EEOC "on or about May 27, 2011").)

conduct alleged in the action, Plaintiff placed an "X" next to the category for "Termination of my employment." In Section II(C) of the form, which calls for a plaintiff to indicate if allegedly discriminatory acts are still being committed, Plaintiff placed an "X" next to the category for "is still committing these acts against me." (*Id.* at 5.) In Section II(D) of the form, which calls for a plaintiff to indicate the basis for the alleged discrimination, Plaintiff selected "race." (*Id.* at 5.) Finally, in Section IV of the form, Plaintiff stated that she seeks to be "reinstated on [her] job and [to] receive all back pay, days, etc." (*Id.* at 6.)

On November 13, 2012, Defendants filed and served their motion to dismiss the Complaint (Dkt. 21), together with a supporting brief (*see* Memorandum of Law in Support of Defendants' Motion to Dismiss the Complaint, dated Nov. 13, 2012 ("Def. Mem.") (Dkt. 23)), the Schmelzer Declaration, and the notice required by Local Civil Rule 12.1 of this Court (Notice to Pro Se Litigant Who Opposes a Rule 12 Motion Supported by Matters Outside the Pleadings ("Rule 12.1 Notice") (Dkt. 21, Ex. 1)). In support of their motion, Defendants argue that: (1) Plaintiff's claim is time-barred because she failed to file a timely charge of discrimination with the Equal Employment Opportunity Commission, as required by 42 U.S.C. § 2000e-5(e)(1); (2) Plaintiff has failed to allege any facts suggesting that her termination was the result of race discrimination; (3) Plaintiff has failed to state a Title VII claim against defendants O'Brien and Hanson, as individuals are not subject to liability under the statute; and (4) the DOE was not properly served within the time limit for service provided for by Rule 4(m) of the Federal Rules of Civil Procedure. (*See generally* Def. Mem.)

On December 18, 2012, Plaintiff filed an opposition to Defendants' motion, in the form of an Affirmation made under penalty of perjury. (*See* Pl. Aff.) Plaintiff failed, however, to

address directly any of the legal arguments made by Defendants on their motion. (*See generally* Pl. Aff., at 1-3.)

Defendants filed a reply brief on February 7, 2012. (*See* Reply Memorandum of Law in Further Support of Defendants' Motion to Dismiss the Complaint, dated Jan. 18, 2013 ("Def. Reply") (Dkt. 26).)

## DISCUSSION

## I. APPLICABLE LEGAL STANDARDS

### A. Rule 12(b)(6)

In deciding a Rule 12(b)(6) motion, the Court "accept[s] as true all factual statements alleged in the complaint and draw[s] all reasonable inferences in favor of the non-moving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007) (citation omitted); *accord Jaghory v. New York State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997). Further, "[i]t is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted 'to raise the strongest arguments that they suggest.'" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (collecting cases); *see also Hughes v. Rowe*, 449 U.S. 5, 10 (1980) (*pro se* party's pleadings must be liberally construed in his favor and are held to less stringent standard than pleadings drafted by lawyers). This liberal standard is "especially" applicable "when dealing with civil rights complaints," such as Plaintiff's. *See Weinstein v. Albright*, 261 F.3d 127, 132 (2d Cir. 2001). At the same time, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss." *Achtman v. Kirby, McInerney, & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006) (citation omitted). Even plaintiffs who are proceeding *pro se* must comply with procedural and substantive rules, and, to survive a motion

7

to dismiss, a *pro se* complaint, like any other complaint, "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)); *Bisson v. Martin Luther King Jr. Health Clinic*, No. 07–5416–cv, 2008 WL 4951045, at *1 (2d Cir. Nov. 20, 2008).

"On a motion to dismiss pursuant to Rule 12(b)(6), the Court limits consideration to: (1) the factual allegations in the complaint, which are accepted as true; (2) documents attached to the complaint as an exhibit or incorporated in it by reference; (3) matters of which judicial notice may be taken; and (4) documents upon whose terms and effect the complaint relies heavily, *i.e.*, documents that are 'integral' to the complaint." *Calcutti v. SBU, Inc.*, 273 F. Supp. 2d 488, 498 (S.D.N.Y. 2003) (citing *Brass v. American Films Techs.*, 987 F.2d 142, 150 (2d Cir. 1993); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).  To incorporate a document by reference, "a complaint 'must make a clear, definite, and substantial reference' to the document," *Allen v. Chanel, Inc.*, No. 12 Civ. 6758 (RPP), 2013 WL 2413068, at *5 (S.D.N.Y. June 4, 2013) (internal quotation marks and citation omitted); "'[l]imited quotation does not constitute incorporation by reference,'" *Cosmas v. Hassett*, 886 F.2d 8, 13 (2d Cir. 1989) (quoting *Goldman v. Belden*, 754 F.2d 1059, 1066 (2d Cir. 1985)).  Documents are "integral" to a complaint if the plaintiff had actual notice of the document and "*reli[es]* on the terms and effect of [that] document in drafting the complaint." *Chambers*, 282 F.3d at 153 (emphasis in original).

In addition, the mandate that a *pro se* plaintiff's complaint be construed liberally "makes it appropriate" for the court to consider the factual allegations in the plaintiff's opposition

materials to supplement the allegations in the complaint. *Johnson v. Wright*, 234 F. Supp. 2d

352, 356 (S.D.N.Y. 2002).

**B.     Rule 12(d)**

Rule 12(d) of the Federal Rules of Civil Procedure governs situations in which

"matters outside the pleadings" are presented to the court on a motion to dismiss pursuant to

Rule 12(b)(6).  Fed. R. Civ. P. 12(d).  "Pursuant to Rule 12(d), the Court must determine

whether the newly presented documents are (1) part of the pleadings such that the Court may

consider them as part of the instant motion; (2) not part of the pleadings such that the documents

should be excluded in deciding [the] motion to dismiss; or (3) not part of the pleadings but

should be considered by converting the instant motion to dismiss to one for summary judgment."

*Madu, Edozie & Madu, P.C. v. Socketworks Ltd. Nigeria*, 265 F.R.D. 106, 122 (S.D.N.Y. 2010).

Rule 12(d) requires that, prior to conversion, all parties "be given a reasonable

opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d).

In the case of a *pro se* party,

> '[n]otice is particularly important' because the pro se litigant 'may
> be unaware of the consequences of [her] failure to offer evidence
> bearing on triable issues.'  Accordingly, pro se parties must have
> 'unequivocal' notice of the meaning and consequences of
> conversion to summary judgment.

*Hernandez v. Coffey*, 582 F.3d 303, 307-08 (2d Cir. 2009) (quoting *Beacon Enters. Inc. v.*

*Menzies*, 715 F.2d 757, 767 (2d Cir. 1983); internal citation omitted).  Such notice must advise

the *pro se* litigant that "all assertions of material fact in the defendants' affidavits and other

papers in support of their motion will be taken as true unless the *pro se* litigant contradicts those

factual assertions in one or more affidavits made on personal knowledge containing facts that

would be admissible in evidence, or by submitting other materials as provided in Rule 56[(c)]."

9

*Arnold v. Goetz*, 245 F. Supp. 2d 527, 540 (S.D.N.Y. 2003).  Local Civil Rule 12.1 codifies these notice requirements by requiring that "[a] represented party moving to dismiss . . . against a party proceeding pro se, who refers in support of the motion to matters outside the pleadings . . ., shall serve and file [a prescribed notice] with the full text of Fed. R. Civ. P. 56 attached at the time the motion is served."

As long as the notice requirements are satisfied and "all parties have been given a reasonable opportunity to present materials pertinent to the motion's disposition," it is within the Court's "discretion . . . to convert a motion filed under Fed. R. Civ. P. 12(b)(6) into one seeking summary judgment." *Aetna Cas. & Surety Co. v. Aniero Concrete Co.*, 404 F.3d 566, 573 (2d Cir. 2005) (internal quotation marks and citation omitted).  "The essential inquiry is whether the [*pro se* party] should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or was taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings." *Malaney v. Elal Israel Airlines*, 331 F. App'x 772, 774 (2d Cir. 2009) (internal quotations and citations omitted).

**C.   Rule 56**

Under Rule 56(a) of the Federal Rules of Civil Procedure, "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Holt v. KMI-Continental, Inc.*, 95 F.3d 123, 128 (2d Cir. 1996).  The Court "cannot try issues of fact; it can only determine whether there are issues to be tried" on the evidence presented. *Am. Mfrs. Mut. Ins. Co. v. Am. Broad.-Paramount Theatres, Inc.*, 388 F.2d 272, 279 (2d Cir. 1967); *accord Sutera v. Schering Corp.*, 73 F.3d 13, 15-16 (2d Cir. 1995).

10

On a summary judgment motion, the moving party bears the burden of showing that no genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Accordingly, the Court "must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in his favor." *L.B. Foster Co. v. Am. Piles, Inc.*, 138 F.3d 81, 87 (2d Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). Nonetheless, the party opposing summary judgment must cite to "particular parts of materials in the record" or show "that the materials cited [by the movant] do not establish the absence . . . of a genuine dispute" as to any material fact. Fed. R. Civ. P. 56(c)(1). In order to make such a showing, "[t]he non-moving party may not rely on conclusory allegations or unsubstantiated speculation," *Scott v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998), but, rather, must present "'significant probative evidence tending to support the complaint.'" *Smith v. Menifee*, No. 00 Civ. 2521 (DC), 2002 WL 461514, at *3 (S.D.N.Y. Mar. 25, 2002) (quoting *First Nat'l Bank of Ariz. v. Cities Servs. Co.*, 391 U.S. 253, 290 (1968)). "If the evidence is . . . not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (internal citations omitted).

Where the party opposing summary judgment is proceeding *pro se*, the Court, once again, must read that party's papers liberally and interpret them to raise their strongest arguments. *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (internal quotation marks and citation omitted). Even a *pro se* plaintiff, however, cannot defeat a motion for summary judgment by relying merely on the allegations of a complaint. *See Champion v. Artuz*, 76 F.3d 483, 485 (2d Cir. 1996). Rather, when confronted with evidence of facts that would support summary judgment, a *pro se* plaintiff, like any other party, must come forward with evidence in

11

admissible form that is capable of refuting those facts. *See Jermosen v. Coughlin*, 877 F. Supp. 864, 867 (S.D.N.Y. 1999) (in order to defeat summary judgment, a *pro se* plaintiff must present concrete evidence from which a reasonable jury could return a verdict in his favor); *see also* Fed. R. Civ. P. 56(c)).

**D.      Statute of Limitations**

Title VII requires a plaintiff to file a timely charge of discrimination with the Equal Employment Opportunity Commission (EEOC) before commencing a federal lawsuit. *See* 42 U.S.C. § 2000e-5(e)(1); *Lewis v. City of Chicago*, 560 U.S. 205, 130 S. Ct. 2191, 2195 (2010). "This statutory requirement effectively acts as a statute of limitations, and Title VII claims are barred by the failure to file a timely charge." *Hill v. Citibank Corp.*, 312 F. Supp. 2d 464, 472 (S.D.N.Y. 2004) (citing *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 712 (2d Cir. 1996)).

Under Title VII, the basic limitations period for filing an administrative charge is 180 days from the alleged discriminatory conduct. 42 U.S.C. § 2000e-5(e)(1). That period is extended to 300 days for aggrieved parties who initially file a complaint with a state agency authorized to grant relief from discrimination claims, *id.*, or for parties who file only with the EEOC if the EEOC then forwards their claim on to the state agency, *see Tewksbury v. Ottaway Newspapers*, 192 F.3d 322, 327-28 (2d Cir. 1999). As the EEOC generally has "work-sharing" agreements with state agencies, including New York's State Division of Human Rights, under which it habitually forwards such charges to the state agencies, *see id.* at 325, the EEOC and the courts assume that the limitations period for filing a charge with the EEOC in a state such as New York, with an authorized agency, is always 300 days, *see, e.g.*, 29 C.F.R. § 1601.13(a)(4)(ii); *Pikuling v. City University of New York*, 176 F.3d 598, 599 (2d Cir. 1999)

("An employment discrimination claim must be filed with the EEOC within 300 days of the alleged discrimination in a state, like New York, with a fair employment agency."). The Court may, therefore, treat the 300-day period as controlling in this case. Further, "the timeliness of a discrimination claim is measured from the date the claimant receives notice of the allegedly discriminatory act, not from the date the decisions takes effect." *Shockley v. Vermont State Colls.*, 793 F.2d 478, 481 (2d Cir. 1986). Thus, in New York, a plaintiff alleging discriminatory termination must file an administrative charge – with either the SDHR or the EEOC – within 300 days of receiving notice of such termination. *See id.* at 481.

Like other statutes of limitations, Title VII's time limits for filing "are subject to . . . equitable tolling," *Baroor v. New York City Dep't of Educ.*, 362 F. App'x 157, 159 (2d Cir. 2010), as well as "the doctrine of continuing violations," *Rice v. Scudder Kemper Investments, Inc.*, No. 01 Civ. 7078 (RLC), 2003 WL 1846934, at *2 (S.D.N.Y. Apr. 3, 2003).

Equitable tolling of the statute of limitations is "only appropriate in rare and exceptional circumstances, in which a party is prevented in some extraordinary way from exercising [her] rights." *Zerilli-Edelglass v. New York City Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003) (internal quotations, alteration, and citations omitted). To avail herself of the benefits of equitable tolling, a plaintiff must have "'acted with reasonable diligence during the time period she seeks to have tolled,'" and must "prove[] that the circumstances are so extraordinary that the doctrine should apply." *See id.* (quoting *Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 512 (2d Cir. 2002)). Examples of situations in which equitable tolling may be appropriate include "where the plaintiff actively pursued judicial remedies but filed a defective pleading during the specified time period; where [the] plaintiff was unaware of . . . her cause of action due to misleading conduct of the defendant; or where a plaintiff's medical

13

condition or mental impairment prevented her from proceeding in a timely fashion."

*Zerilli-Edelglass*, 333 F.3d at 80 (internal quotations and citations omitted).  The "pendency of a

grievance, or some other method of collateral review of an employment decision, does not toll

the running of the limitations period."  *Arias-Mieses v. CSX Transp., Inc.*, 630 F. Supp. 2d 328,

332 (S.D.N.Y. 2009) (quoting *Delaware State College v. Ricks*, 449 U.S. 250, 257 (1980)).

"Under the continuing violation exception to the Title VII limitations period, if a

Title VII plaintiff files an EEOC charge that is timely as to any incident of discrimination in

furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that

policy will be timely even if they would be untimely standing alone."  *Lambert v. Genesee*

*Hosp.*, 10 F.3d 46, 53 (2d Cir. 1993), *abrogated on other grounds by Kasten v. Saint-Gobain*

*Performance Plastics Corp.*, 131 S. Ct. 1325 (2011).  The continuing violation exception

applies, though, only in "'cases involving specific discriminatory policies or mechanisms such as

discriminatory seniority lists.'"  *Valtchev v. City of New York*, 400 F. App'x 586, 588 (2d Cir.

2010) (quoting *Lambert*, 10 F.3d at 53).  Thus, "multiple incidents of discrimination, even

similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a

continuing violation."  *Lambert*, 10 F.3d at 53.

## II.   DEFENDANTS' MOTION

As noted above, Plaintiff claims, in this action, that Defendants violated her rights under

Title VII by terminating her employment on the basis of her race.  Defendants assert a number of

grounds for dismissal of the action, including that Plaintiff received notice of her termination in

April of 2009, more than 300 days prior to the date in 2011 when Plaintiff filed her EEOC

charge.  (*See* Def. Mem., at 6-7.)  As the unrefuted evidence submitted on the motion shows

Defendants to be correct on this point, even if the Complaint is somewhat equivocal, I

14

recommend that Defendants be granted summary judgment dismissing the action under the applicable statute of limitations, and that the Court not reach the other arguments that Defendants raise on their motion.

### A.    Sufficiency of Plaintiff's Complaint under Rule 12(b)(6)

The 300-day period for Plaintiff to file a complaint with the EEOC began to run when Plaintiff was notified of her termination, not when the termination took effect or when her post-termination grievance proceeding concluded. *See Shockley*, 793 F.2d at 48; *Arias-Mieses*, 630 F. Supp. 2d at 332.  While Plaintiff concedes in her Complaint that she did not file her EEOC complaint until, at the earliest, sometime in May, 2011 (*see* Compl., at 5; *see also supra* at Background, Section B(1)), Plaintiff's Complaint and attached administrative filings are vague and arguably inconsistent with respect to when (*i.e.*, how long before her EEOC filing) she received notice of her termination.

In this regard, Plaintiff merely alleges in her Complaint that she received a disciplinary letter "a few days" after the March, 2009 incident, and was terminated "[a]fter everything was said and done." (Compl., at 3-4.)  In Section 3 of her EEOC intake questionnaire (which Plaintiff has attached to her Complaint in this case), Plaintiff recorded her date of termination as "4/3/09" (EEOC Questionnaire, at 1), but, in Section 5 of the same form, although it appears that Plaintiff may have initially provided that same date for the date when she was "[d]ischarged," that date is crossed out, and what appears to be "4/20/11" is written in, instead (*see id.*, at 2). Then, in Plaintiff's subsequent SDHR complaint (also attached to the Complaint in this case), Plaintiff states that she "got the final decision on 4-20-11," which, she asserts, was when "the most recent act of discrimination happened." (*See* SDHR Charge, at 1-2.)  Drawing all

15

reasonable inferences from these allegations in her favor, the Complaint may, at least arguably, be construed to plead that Plaintiff did not receive notice of her termination until April 20, 2011.

The documents submitted by Defendants, however, make clear that Plaintiff was, in fact, notified of her termination in April of 2009, and that what happened on April 20, 2011 was that her grievance was denied by the arbitrator. The Termination Letter referenced above (*see supra* at Background, Section A), which was addressed to Plaintiff from the Superintendent of her district, was dated April 1, 2009, and informed Plaintiff that her "position with the Department [was being] terminated close of business April 3, 2009" (Schmelzer Decl., Ex. A). Plaintiff acknowledged receipt of that letter with her signature, dated April 3, 2009, and, as a witness to Plaintiff's receipt, O'Brien signed the letter as well, also dating her signature April 3, 2009. (*Id.*, at 2.) Meanwhile, the Arbitration Opinion (Schmelzer Decl., Ex. B) bears the date April 20, 2011, and, in its text, it recounts that Plaintiff's termination had occurred on April 3, 2009 (*id.*, at 2, 15).[6]

If the Termination Letter and Arbitration Opinion could be deemed to be incorporated by reference in the Complaint, or "integral" to it, then this Court could consider them on a motion to dismiss under Rule 12(b)(6). *Calcutti*, 273 F. Supp. 2d at 498. Neither construct, however, is applicable here.

First, Plaintiff refers only once to the Termination Letter in the body of her Complaint (*see* Compl., at 4 ("After everything was said and done, I received a letter saying I was

---

[6] Similarly, the SDHR Determination dismissing Plaintiff's complaint with that agency for untimeliness notes that it was "uncontested that the complainant's last day of work for respondent was April 9, 2009, more than twenty-six months prior to the . . . filing of the instant matter." (Schmelzer Decl., Ex. C, at 1.) Nowhere in her Complaint, or its attachments, does Plaintiff mention the SDHR Determination.

16

terminated.")), and does not refer at all to the Arbitration Opinion. Even if the administrative complaints that Plaintiff attached to her Complaint (including the EEOC Questionnaire and SDHR Charge) are considered to constitute part of the Complaint itself, Plaintiff has, then, made only a brief, oblique reference to the Arbitration Opinion (*see* SDHR Charge, at 2 ("I got the final decision on 4-20-11"), and even a more general reference to the grievance process that produced that opinion (*see* EEOC Questionnaire, at 3 (noting existence of grievance proceeding)). Such "passing" references are not enough to incorporate the Termination Letter or the Arbitration Opinion into the Complaint by reference. *Williams v. Time Warner Inc.,* 440 F. App'x 7, 9 (2d Cir. 2011); *see also Wright v. Goord,* 554 F.3d 255, 271 (2d Cir. 2009) (rejecting plaintiff's argument that content of grievance was incorporated by reference where existence of grievance was referred to briefly in form complaint ); *Thomas v. Westchester Cnty. Health Care Corp.,* 232 F. Supp. 2d 273, 276 (S.D.N.Y. 2002) (holding that a complaint's "brief reference [to a disciplinary hearing and resulting report] does not qualify as [sufficiently] clear, definite or substantial" to find incorporation by reference); *cf. Helprin v. Harcourt, Inc.,* 277 F. Supp. 2d 327, 331 (S.D.N.Y. 2003) (finding written agreement incorporated by reference where complaint made "several substantial references to the [a]greement, even quoting certain paragraphs of the [a]greement verbatim" and was "based mainly on interpreting specific terms of the [a]greement").

Second, while it appears likely that Plaintiff knew of the Termination Letter and the Arbitration Opinion, those documents are not essential to the Complaint, *see, e.g., PB Americas Inc. v. Continental Casualty Co.,* 690 F. Supp. 2d 242, 253 (S.D.N.Y. 2010) (finding insurance policy, "[b]y the very nature of the suit, . . . an integral document to the [c]omplaint," where plaintiff alleged that "[d]efendants breached the [p]olicy by refusing to provide coverage"), and

17

the parties' submissions offer no basis for the Court to conclude that Plaintiff relied on either of those documents in drafting the Complaint, *see Chambers*, 282 F.3d at 153.  Accordingly, the Court cannot find those documents to be "integral" to the Complaint.  *See U.S. Bank Nat. Ass'n v. Bank of America, N.A.*, No. 12 Civ. 4873 (CM), 2012 WL 6136017, at *2 (S.D.N.Y. Dec. 11, 2012) (declining to find documents integral to the plaintiff's amended complaint, where, regardless of whether the documents were "central" to the plaintiff's case, there was "simply no evidence, from the face of the Amended Complaint or otherwise, that [the plaintiff] relied at all upon the terms and effects of these [documents] in drafting the Amended Complaint"); *see also Allen*, 2013 WL 2413068 at *6 & n.8 (declining to find employment separation agreement, which, if considered, would likely have been dispositive of plaintiff's claims, integral to Title VII complaint because defendant failed to demonstrate reliance).

Under the circumstances, the exhibits to the Schmelzer Declaration – specifically including the Termination Letter and Arbitration Opinion – must be considered "matters outside the pleadings" for the purposes of Rule 12(b)(6), and should not be considered by the Court unless the motion is converted to a motion for summary judgment under Rule 56.  *See* Fed. R. Civ. P. 12(d); *Madu, Edozie & Madu, P.C.*, 265 F.R.D. at 122.

**B.     Conversion to a Motion for Summary Judgment**

In this case, conversion of Defendants' motion to one for summary judgment would be appropriate.

In compliance with Local Rule 12.1, Defendants served Plaintiff with formal, written notice that the motion could be converted by the Court.  This notice informed Plaintiff, in relevant part, that:

> [D]efendants in this case have moved to dismiss . . . pursuant to
> Rule 12(b) . . . of the Federal Rules of Civil Procedure, and have
> submitted additional written materials.  This means that defendants
> have asked the Court to decide this case without a trial, based on
> these written materials.  You are warned that the Court may treat
> this motion as a motion for summary judgment under Rule 56 . . . .
> For this reason, THE CLAIMS YOU ASSERT IN YOUR
> COMPLAINT MAY BE DISMISSED WITHOUT A TRIAL IF
> YOU DO NOT RESPOND TO THIS MOTION by filing sworn
> affidavits and other papers as required by Rule 56(e).
>                          . . .
> In short, Rule 56 provides that you may NOT oppose the
> defendant's motion simply by relying upon the allegations in your
> complaint.  Rather, you must submit evidence, such as witness
> statements or documents, countering the facts asserted by the
> defendant and raising issues of fact for trial.
>                          . . .
> If you do not respond to the motion on time with affidavits or
> documentary evidence contradicting the facts asserted by the
> defendants, the Court may accept the defendants' factual assertions
> as true.

(Rule 12.1 Notice, at 1 (capitalization in original).)  Defendants also attached the full text of

Rule 56 to this notice.  (*See id.*, at Appendix A.)

Defendants' notice was "unequivocal" for the purposes of Rule 56, *see Beacon Enters.*

*Inc.*, 715 F.2d at 767, and, in opposition to Defendants' motion, Plaintiff had a "reasonable

opportunity" to submit evidentiary material supporting her position as to the timeliness of her

Title VII claim, *Aetna Cas. & Surety Co.*, 404 F.3d at 573.  *See also Hernandez v. Coffey*,

582 F.3d 303, 308 n.2 (2d Cir. 2009) (citing cases finding that notice to *pro se* parties pursuant to

Local Rule 12.1 provides sufficient notice to convert motion to dismiss to motion for summary

judgment without further notice or explanation from court).  In fact, in opposition to Defendants'

motion, Plaintiff proceeded to submit an affirmation, made under penalty of perjury, setting forth

testimonial evidence outside her pleading.  (*See generally* Pl. Aff.)

19

Plaintiff "thus cannot claim to have been unaware that the district court was considering material outside of the [Complaint] or that [she] lacked notice of the possibility that the district court would convert the motion to dismiss into a motion for summary judgment." *In re G & A Books, Inc.*, 770 F.2d 288, 295 (2d Cir. 1985) (affirming district court's decision to convert a Rule 12(b)(6) motion to dismiss into a motion for summary judgment where counseled plaintiff "had itself submitted materials outside the record"); *see also Malaney*, 331 F. App'x at 774 (affirming conversion of motion to dismiss into a motion for summary judgment where *pro se* plaintiff asserting Title VII claim received notice similar to that which Defendants provided here).

Further, in light of the fact that Plaintiff has raised no challenge to either the authenticity of her signature on the Termination Letter or the 2009 date that it reflects, no reasonable juror could find that Plaintiff was not then placed on notice of her termination. Even "view[ing] the evidence in the light most favorable to" Plaintiff, and "draw[ing] all reasonable inferences in [her] favor," *L.B. Foster Co*, 138 F.3d at 87, there is no genuine issue as to this material fact. Indeed, in her opposition Affirmation, Plaintiff appears to concede that her termination came shortly on the heels of the March, 2009 incident, stating that, shortly after the incident, she approached her principal, who reassured her, but that, "the next thing you know," she was terminated. (Pl. Aff., at 3.) Certainly, Plaintiff's assertion in the EEOC Questionnaire that her "discharge" occurred in April, 2011 (*see* EEOC Questionnaire, at 2), is "conclusory" at best, *Scott v. Almenas*, 143 F.3d at 114, and is not supported by any evidence in the record, let alone "significant probative evidence," *Smith v. Menifee*, 2002 WL 461514, at *3 (internal quotation marks and citation omitted). Rather, the documentary evidence submitted by Defendant establishes that the April, 2011 date cited by Plaintiff was *not* the date on which she first

20

received notice of her termination, but rather the date on which the arbitrator denied her union grievance challenging the termination decision.

This Court also notes that the record presents no basis for tolling of the statute of limitations in this case. Plaintiff has not demonstrated that she acted with reasonable diligence during the limitations period, nor has she put forth any evidence of exceptional circumstances that would warrant equitable tolling. Nor is the "continuing violation" exception to the statute of limitations applicable here. Although Plaintiff alleges in her Complaint that the Defendants are "still committing these acts against me" (Compl., at 5), and asserts that she is the "third black female worker who has been fired" (SDHR Charge, at 2), Plaintiff has failed to produce evidence capable of raising a genuine dispute as to the existence of a continuing violation of Title VII, or suggesting that Defendants engaged in a discriminatory policy or mechanism. *See Carrasco v. New York City Off-Track Betting Corp.*, 858 F. Supp. 28, 31-32 (S.D.N.Y. 1994) (finding that, on a motion to dismiss, "the fact that the 'Continuing Action' box was checked on [plaintiff's] EEOC charge" was insufficient as to the existence of continuing violations where "plaintiff alleged only one discrete act, the denial of a promotion" and put forth only "general allegations of the existence of a discriminatory pattern").

As the unrefuted evidence (a) makes it patently clear that Plaintiff received notice of her termination in April, 2009, but did not file an EEOC charge until at least May, 2011, well beyond the 300-day limitations period, and (b) offers no basis for tolling or finding an exception to the application of the limitations period, Plaintiff's Title VII claim cannot stand. I therefore recommend that the Court exercise its discretion pursuant to Rule 12(d) of the Federal Rules of Civil Procedure to convert Defendants' motion to dismiss into one for summary judgment, and then grant the motion on statute-of-limitations grounds. Regardless of the potential merit of any

21

of Defendants' other arguments, I recommend that the Court not reach those arguments, given

that Plaintiff's Title VII claim is time-barred under the applicable law.

## CONCLUSION

For the foregoing reasons, I respectfully recommend that Defendant's motion to dismiss

the Complaint (Dkt. 21) be converted into a motion for summary judgment and that such motion

be granted.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil

Procedure, the parties shall have fourteen (14) days from service of this Report to file written

objections. *See also* Fed. R. Civ. P. 6 (allowing three additional days for service by mail).  Such

objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy

copies delivered to the chambers of the Honorable Deborah A. Batts, United States District

Judge, United States Courthouse, 500 Pearl Street, Room 2510, New York, New York 10007,

and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street, Room 1660,

New York, New York 10007.  Any requests for an extension of time for filing objections must

be directed to Judge Batts.  FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14)

DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE

APPELLATE REVIEW. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension

Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d

Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated:  New York, New York
        July 17, 2013

Respectfully submitted,

DEBRA FREEMAN
United States Magistrate Judge

<u>Copies to</u>:

The Honorable Deborah A. Batts, U.S.D.J.

Ms. Adrienne Regina Jackson
1677 Lafayette Ave.
Apt. # 4B
Bronx, NY 10473

Counsel for Defendants (via ECF)